168 So. 130

**THIBODEAUX v. LEGER et al.**

No. 33341.

March 30, 1936.

Rehearing Denied April 27, 1936.

This suit is against Leger and his surety in solido for $2,500, and against Leger alone for $320.07, plaintiff alleging that Leger fraudulently appropriated $2,820.07 out of the taxes collected by him, which amount plaintiff was compelled to pay out of his private funds. The surety company is sued for $2,500, as its maximum liability under the bond.

The surety company answered admitting execution of the bond, but denying liability thereunder. Leger failed to answer and a preliminary default was entered against him. The case was regularly tried on the claim against the surety company and on confirmation of the default entered against Leger, it being agreed that the evidence adduced on the trial be used on the confirmation of default. The trial resulted in a judgment in favor of plaintiff and against the defendant Leger for $238.05 and in favor of the defendant surety company and against the plaintiff, rejecting plaintiff's demand; the defendant Leger being ordered to pay the costs. The appeal was by plaintiff, who died during its pendency. Plaintiff's widow in community and administratrix of his succession and his four children, all of full age, have been regularly substituted as parties plaintiff and appellants.

W. C. Perrault and A. V. Pavy, both of Opelousas, for appellants.

Spearing, McClendon, McCabe & Schmidt, of New Orleans, and Dubuisson & Dubuisson, of Opelousas, for appellee United States Fidelity & Guaranty Co.

ROGERS, Justice.

The plaintiff was the sheriff and ex officio tax collector of the parish of St. Landry. Laurent J. Leger was his chief deputy from June 28, 1923 to June 1, 1932. The United States Fidelity & Guaranty Company was the surety on Leger's bond in favor of the plaintiff.

Leger's alleged shortage occurred between March 1, 1932, and May 1, 1932, and its discovery resulted from an audit of the tax collector's records by representatives of the supervisor of public accounts. The alleged shortage is made up of seven specific items which for convenience of discussion the trial judge placed in three groups or classifications.

The first group consists of items of $171.-52, $46.53, and $20, a total of $238.05. These items represent money withdrawn by Leger from tax collections, the first two on his personal checks, which remained unpaid because of insufficient funds to Leger's credit in the drawee bank, and the third on a third person's draft cashed by Leger, which draft was returned unpaid.

The second group is also made up of three items, namely, for $75, $104, and $1,049.18. The first item of $75 represents the difference between the total amount of taxes collected by Leger between March 1, 1932, and March 7, 1932, and the amount entered in his cashbook for that period. Similarly, the second item of $104 represents the difference between the total amount of taxes collected by Leger between March 24, 1932, and March 30, 1932, and the amount entered in his cashbook for the same period. The third item of $1,049.18 represents an amount which plaintiff alleges Leger collected from taxpayers between March 30, 1932, and April 30, 1932, and for which he made no entry at all in his cashbook.

The third group is composed of one item of $1,353.84, representing an additional shortage in the tax collector's accounts as reported by the representatives of the supervisor of public accounts, which amount plaintiff claims covers tax collections made by Leger and not entered in his cashbook or on the tax rolls.

The trial judge held that Leger was liable to plaintiff for the items composing the first group, but as he did not think Leger was guilty of any fraudulent act in connection therewith, he held that the surety company was not liable therefor, under the terms of the bond. He rejected the items embraced within the second group, because he found the evidence insufficient to support plaintiff's charge of fraudulent appropriation on Leger's part. The single item placed in the third group was rejected, because, in the opinion of the trial judge, the evidence failed to connect Leger in any manner with the alleged shortage.

The record discloses that all taxes were collected by Leger, the chief deputy, assisted by W. D. Lastrapes. They served the public from different windows in the office, each being assigned certain wards of the parish. Tax receipts were issued in duplicate, one of the duplicates being given to the taxpayer and the other being retained in the office. Each collector was in charge of a separate cash box, in which the money and checks received by him were deposited. Each collector also kept a "Cashbook" or "Tax Book," in which the money and checks he received were entered. Every afternoon, after collections were completed, Leger and Lastrapes made one deposit slip covering the money and checks collected by them jointly during the day, Lastrapes counting the money and Leger listing the checks on the deposit slip. Lastrapes usually made the deposit. The total amount shown by the tax receipts was not checked against the total amount entered in the cashbooks or the total amount of the deposit to be made in the bank. Nor was there any checking of the items in the cashbooks against the tax receipts retained by each collector or the amount of cash in each drawer. The daily deposit did not necessarily reflect the amount of taxes collected that day, and the

total amount on deposit in bank to the credit of the sheriff's special account at any particular time did not necessarily include the total collections of the office during that period.

The examiner of the supervisor's office checked the tax collector's office strictly upon the basis of the total collections as reflected by the tax receipts retained by the deputy tax collectors and the total collections as shown by the cashbooks kept by them, plus the money and checks on hand at the time in the office.

The trial judge found that the books of Mr. Lastrapes were in order and that no imputation of wrong was at any time directed to him, and therefore any discrepancy between the funds collected and the funds as entered in the cashbooks was clearly imputable to Leger. We concur in the judge's finding.

The evidence shows that the original shortage declared by the office of the supervisor of public accounts and paid by plaintiff was $2,582.02, which did not include the three items composing the first group hereinabove mentioned. Those three items, two checks and a draft, were accepted as cash in the checking of the accounts. It was only after the shortage was declared that the checks and draft were presented to the bank and returned unpaid. Subsequently, plaintiff paid the amount of the checks and drafts into the official fund of the parish.

The record shows that both Leger and Lastrapes at times cashed their personal checks out of the official funds; that Las-

trapes had on past occasions cashed checks for a son of the plaintiff; that Leger and Lastrapes frequently cashed checks for responsible persons; and that plaintiff himself was in the habit of cashing checks, through Leger and Lastrapes, out of the proceeds of the tax collections.

 Unquestionably, as found by the trial judge, Leger is liable to plaintiff for the amount of the checks, and he admitted this in his testimony. He is also liable for the amount of the draft, because in cashing the draft he acted on his own responsibility. The trial judge also correctly found that Leger's acts were not fraudulent or criminal, and the surety company, therefore, was not liable.

 We think the trial judge erred in failing to render judgment against Leger for the items of $75 and $104 appearing in the second group. The first item of $75 is alleged to have been wrongfully appropriated, because the auditor's examination showed that from March 1, 1932, to March 7, 1932, Leger collected $336.32, as evidenced by the duplicate receipts issued during that period, but entered in his cashbook only $261.32 for the same period, or $75 less than was actually collected; and that from March 24, 1932, to March 30, 1932, Leger collected $1,699.96 and entered on his cashbook for the same period $1,595.96, or $104 less than he collected.

Leger denied that he had misappropiated the money, and stated he was unable to account for his failure to make the entries in the cashbook. The trial judge found that there was no evidence of any fraud

on Leger's part in connection with the apparent deficit shown in his accounts. We are unable to say that the finding is incorrect. The record suggests several explanations for the apparent discrepancies in Leger's account. The entries in the cashbook were made by reference to the tax receipts, and if in the copying some of them were inadvertently overlooked a failure to enter them would result. Or, if while making the entries from the receipts, Leger should have been interrupted and turned aside, and recommenced at a place different from where he left off, a failure to enter the receipts unintentionally passed would also result. During the period of the alleged discrepancies, Leger was frequently under the influence of liquor, and it may be due to that fact that errors occurred in his accounts. There is also uncontradicted evidence in the record showing that shortly before the shortage claimed against Leger is alleged to have occurred, there was a shortage in the sheriff's funds amounting to several hundred dollars. The books did not disclose this shortage, but it was disclosed by the amount on deposit in the bank. Leger and Lastrapes discussed this shortage, had an idea who the party responsible for the shortage was, but neglected to inform the sheriff. The party's name was not disclosed by the evidence, and there is no way to determine whether the party suspected by Leger and Lastrapes to be responsible for this shortage was in a position to be responsible for the shortage subsequently attributed to Leger.

While the circumstances do not show that Leger fraudulently appropriated the two items aggregating $179, they do show that he is liable to plaintiff for that amount. He received the money for plaintiff's account, and he has failed to show that he paid the money to plaintiff or deposited it in the bank to plaintiff's credit. As Leger's acts were not shown to be fraudulent, the surety company, as in the case of the items composing the first group, cannot be held liable therefor.

The trial judge correctly rejected plaintiff's claim for $1,049.18, the third item embraced within the second group, and for $1,353.84, the single item embraced in the third group.

The claim for $1,049.18 represents the taxes due by the Palmetto Mercantile Company. When the company's draft was received in payment of the taxes, Leger issued his receipt and entered the amount thereof in his cashbook. The draft was deposited in the bank to the sheriff's special account, but it was not paid, and the bank charged back the amount to the sheriff's account, and Leger, accordingly, deducted the amount from his cashbook, but apparently did not cancel his receipt. Subsequently, the draft was paid to the bank and Leger failed to enter the payment in his cashbook. The ultimate result was that the bank received the money and the sheriff's account was duly credited with the payment. Plaintiff contends that Leger's failure to enter the amount in his cashbook was a device to cover up his fraudulent appropriations to that amount. But the record is wholly lacking in evidence to support the contention.

█ The claim for $1,353.84 is based on plaintiff's contention that the sheriff, as disclosed by the auditor's report, was short in his funds to that amount, in addition to those charged. No discrepancies in Leger's books are shown in support of the claim, and the records utterly fail to disclose anything in connection with the alleged shortage.

██ Taking up plaintiff's claim against the surety company in connection with the three items of the first group, aggregating $238.05, and the two items of the second group aggregating $179 for which Leger is liable to plaintiff, we find that the surety company's obligation as measured in the terms of its contract is to pay to the plaintiff "any pecuniary loss sustained * * * of money * * * occasioned by any acts of fraud, dishonesty or any criminal act by the employee directly or through connivance, while occupying the position of Deputy Tax Collector * * *."

Since there was no proof that Leger was guilty of any fraudulent, dishonest, or criminal act, no liability attaches to the surety company under the bond, unless, as contended by plaintiff, the bond is a statutory bond and is subject to the rule that irrespective of the terms of the bond everything in the statute should be read into the bond and everything in the bond which is not in the statute should be read out of the bond.

In support of his contention that the bond is a statutory bond, plaintiff refers to section 57 of Act No. 170 of 1898. The statutory provision relied on reads as follows, viz.:

"Sec. 57. Be it further enacted, etc., That each tax assessor, and each tax collector and each sheriff and ex-officio collector of State taxes, is authorized to appoint as many deputies as he may require, who shall take the constitutional oath of office, and from whom the tax assessor, tax collector or sheriff shall require such security in his own favor as he deems sufficient; and he may perform all the functions of the office of tax assessor or tax collector through said deputies, but he shall be officially and pecuniarily responsible on his bonds, and in all other respects for the acts of said deputies."

The statutory provision directs the sheriff and ex-officio tax collector to take from his deputies "security in his own favor," but it does not prescribe the conditions which must be embodied in the security. All that it requires in that respect is that the security shall be such as the sheriff or tax collector "deems sufficient." The statute does not prescribe any conditions to be read into or out of the bond. That is a matter which is left entirely to the discretion of the sheriff or tax collector. The statute places upon the sheriff or tax collector the responsibility of exacting such security as he may deem sufficient to protect himself against the acts of his deputies for which the statute makes him officially and pecuniarily responsible on his own bond.

In the case before us, the plaintiff sheriff and tax collector deemed it sufficient to exact security from his deputy Leger only for his fraudulent, dishonest, or criminal acts and not for his careless or negligent

acts. Therefore, it is plain that any loss resulting to plaintiff from Leger's mere carelessness or negligence imposes no liability on the surety company.

For the reasons assigned, the judgment appealed from is amended by increasing the amount thereof in plaintiff's favor against the defendant Laurent J. Leger from $238.-05 to $417.05, and as thus amended the judgment is affirmed. The defendant Leger is to pay all costs.

O'NIELL, C. J., absent.